UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARRELL LEE OWENS,

     Plaintiff,

v.                              Case No:   8:14-cv-2261-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

This cause is before the Court on Plaintiff, Darrell Lee Owens' Complaint (Doc. 1) filed on September 11, 2014.   Plaintiff, Darrell Lee Owens seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On May 5, 2011, filed an application for disability, disability insurance benefits and supplemental security income asserting a disability onset date of April 1, 2010.   (Tr. p. 80-81, 177).   Plaintiff's applications were denied initially on June 24, 2011, and on reconsideration on August 8, 2011. (Tr. p. 80-83).   A hearing was held before Administrative Law Judge B.T. Amos on January 22, 2013. (Tr. p. 36-51).   The ALJ issued an unfavorable decision on February 7, 2013. (Tr. p. 17-30).   On July 10, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. p. 1-3).   Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 11, 2014.   This case is ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (See, Doc. 14).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

[1] Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through June 30, 2012. (Tr. p. 19).   At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2010, the alleged onset date. (Tr. p. 19).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: bipolar disorder, history of attention deficit disorder (ADD), restless leg syndrome (RLS), and mild acute right lumbosacral radiculopathy (20 C.F.R. §§ 404.1520(c) and 416.920(c)). (Tr. p. 19). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 24).   At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform light work, except that he is limited to simple, routine, repetitive tasks; would perform best in a low social demand setting; must avoid concentrated exposure to extreme cold, extreme heat, vibrations, and work hazards; can only occasionally climb ladders, ropes and scaffolds; can frequently climb ramps and stairs; and, can frequently stoop, kneel, and crouch.   (Tr. p. 22).   The ALJ decided that Plaintiff is not capable of performing his past relevant work as a sales associate, bartender or restaurant worker. (Tr. p. 27-28).   The ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy which

Plaintiff is able to perform.   (Tr. p. 28-29).   The ALJ determined that Plaintiff has not been under a disability from April 1, 2010 through the date of the decision. (Tr. p. 30).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II. Analysis

Plaintiff raises two issues on appeal.   As stated by Plaintiff, they are:

1)   The ALJ failed to include the severe impairments of Borderline IQ and Fetal Alcohol Syndrome and take these impairments into consideration in his RFC determination; and,

2)   The ALJ failed to obtain vocational expert testimony as was required due to the presence of non-exertional impairments.

**A.   Whether the ALJ erred in failing to include Borderline IQ and Fetal Alcohol Syndrome as severe impairments.**

Plaintiff argues that the ALJ erred in failing to include Plaintiff's Borderline Intellectual Functioning and his Fetal Alcohol Syndrome in the ALJ's findings of severe impairments. Plaintiff asserts that Dr. Rosenblatt found Plaintiff to be functioning in the Borderline range of intelligence, and Plaintiff's educational records support this finding.   Dr. Rosenblatt and Dr. Mardo confirmed a diagnosis of Fetal Alcohol Syndrome and found that Plaintiff was limited in his ability to maintain stable employment due to this finding.

The Commissioner asserts that even if the ALJ failed to list Borderline Intellectual Functioning and Fetal Alcohol Syndrome as severe impairments at step two of the sequential evaluation, the ALJ did consider these impairments in combination with all of Plaintiff's impairments and therefore even if the ALJ erred, it was a harmless error. The Commissioner argues that the ALJ specifically discussed Plaintiff's Fetal Alcohol Syndrome during his discussion of Veronica Mardo, M.D.'s records where she found that the Fetal Alcohol Syndrome was likely to cause Plaintiff's ADD and mixed bipolar disorder, and the ALJ found these impairments to be severe. The Commissioner claims that the ALJ did consider Plaintiff's reports of limited intelligence including his IQ score.   Further, the Commissioner contends that the state agency

medical experts Barbara Lewis, Ph.D. and Eric Wiener, Ph.D. support the ALJ's finding that Plaintiff is able to perform single, routine, repetitive tasks despite his mental impairments.

At step two of the sequential evaluation, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, history of attention deficit disorder (ADD), restless leg syndrome (RLS), and mild acute right lumbosacral radiculopathy. (Tr. p. 19).   The ALJ discussed the issue of Fetal Alcohol Syndrome in one portion of his Decision in his review of Dr. Mardo's records.   (Tr. p. 26). The ALJ noted Dr. Mardo's evaluation in September 2012 where she diagnosed Plaintiff with ADD and mixed bipolar disorder "which [s]he concluded were likely the result of prenatal alcohol exposure suggestive of fetal alcohol syndrome."   (Tr. p. 26). The ALJ noted that Dr. Mardo's diagnosis indicated that Plaintiff's disorder was severe and that this severe diagnosis was "'very likely to limit [Plaintiff's] ability to sustain employment.'"   (Tr. p. 26). The ALJ determined that Dr. Mardo's diagnosis showed Plaintiff had serious functional limitations, but that Dr. Mardo failed to address any specific loss of function and her opinions were simply conclusive without support from the medical records.   (Tr. p. 26). The ALJ gave Dr. Mardo's opinion little weight.

The ALJ mentioned that Plaintiff had an IQ score of 78 and had difficulty completing a serial seven test but was able to complete a serial three test.   (Tr. p. 21). The ALJ acknowledged that Plaintiff's testing showed that he had a limited fund of knowledge, but was able to spell the word "world" backwards and forwards, was able to perform simple mathematical calculations, could immediately recall three out of three items, and displayed an intact memory on multiple occasions.   (Tr. p. 21). The ALJ noted that Plaintiff testified that he dropped out of school after the eighth grade, can barely read, and is able to do a little math.   (Tr. p. 25).   The ALJ found little evidence in the record to support Plaintiff's claims of severe mental impairments, again

mentioning that Plaintiff was able to spell the word "world" backwards and forwards and perform simple mathematical calculations. (Tr. p. 25). The ALJ acknowledged again that Plaintiff had an IQ score of 78, had difficulty completing serial sevens, but was able to complete serial threes, and had a somewhat limited fund of knowledge. (Tr. p. 25). The ALJ discounted Dr. Rosenblatt's opinion that Plaintiff was unable to sustain employment finding that this issue is reserved to the Commissioner, and does not follow the standards and definition of disability used by the Social Security Administration because Dr. Rosenblatt failed to include Plaintiff's residual abilities. (Tr. p. 27). The ALJ also found that Plaintiff was limited to simple, routine, repetitive tasks and low socially demanding settings.   (Tr. p. 29).

Plaintiff included educational records for the ALJ's Review.   (Tr. p. 201-206).   These records indicate Plaintiff did poorly in school receiving some "D's" in Second Grade and some "F's" in Fourth Grade.   (Tr. p. 202-203).

On October 23, 2012, Plaintiff was evaluated by Arthur I. Rosenblatt, Ph.D., a licensed psychologist.   (Tr. p. 576-578).   Dr. Rosenblatt administered the Ammons Quick Test, Finger Tapping Test, Mini Mental Status Examination, and Trail Making test.   (Tr. p. 577). Dr. Rosenblatt found that the results of the neuropsychological testing suggested that Plaintiff had significant deficits for his age.   (Tr. p. 577).   Dr. Rosenblatt found Plaintiff to be functioning in the Borderline range of Intelligence with an IQ score of 78, and the pattern "was suggestive of a congenital global deficit."   (Tr. p. 577).   Dr. Rosenblatt found that the Mini Mental status Examination results were suggestive of mild dementia or a general decrease in functioning.   (Tr. p. 577). Plaintiff could repeat three objects that he saw immediately, but after 2 minutes could only name 1, and Plaintiff demonstrated difficulty with attention and calculation abilities.   (Tr. p. 577). Dr. Rosenblatt found Plaintiff's psychomotor speed to be mildly impaired, he had difficulty in

problem solving, abstract reasoning and mental flexibility. (Tr. p. 577). Dr. Rosenblatt found Plaintiff's Digit-symbol production was below expectations and suggest of a global deficit or progressive process, but found no indication of speech problems or aphasia. (Tr. p. 577). Dr. Rosenblatt explained that an IQ of 78 from a Quick Test is in the Borderline range of intelligence, and found that this IQ was most likely an over-estimate of Plaintiff's actual IQ. (Tr. p. 577). Dr. Rosenblatt concluded that Plaintiff's testing results indicate a person with significant neuropsychological deficits consistent with either Fetal Alcohol syndrome or pervasive Developmental Disorder.  (Tr. p. 577).  Dr. Rosenblatt found that Plaintiff reported maternal alcohol abuse, and he would suspect that Plaintiff suffers from Fetal Alcohol Syndrome.  (Tr. p. 577).  Dr. Rosenblatt concluded that "[i]t is likely that [Plaintiff] would be extremely limited in his ability to maintain stable employment on either a full or part-time basis.  In my clinical opinion, he meets the criterion of being disabled."  (Tr. p. 577). Dr. Rosenblatt's diagnostic impression was Axis I, Fetal Alcohol Syndrome, Rule out Pervasive Developmental Disorder, History of ADHD, History of Bipolar Disorder, Alcohol Abuse in sustained full remission, Polysubstance Dependence in sustained full remission, and Axis II, Borderline Intellectual Functioning with a GAF score of 40.   (Tr. p. 577).

On December 6, 2012, Veronica Mardo, M.D., Board Certified in Clinical Genetics and Family Medicine evaluated Plaintiff. (Tr. p. 590). She determined after review of Dr. Rosenblatt's evaluations that Plaintiff suffered from a global neuropsychological deficit which was of a congenital origin with severe impairments in attention, concentration skills and deficits in memory and reasoning.   (Tr. p. 590). Dr. Mardo found that these deficits are common in people affected with Fetal Alcohol Spectrum Disorders.  (Tr. p. 590). Dr. Mardo noted that Plaintiff had been diagnosed with ADD and Mixed Bipolar Disorder, and had a positive history of prenatal alcohol

exposure. (Tr. p. 590). Dr. Mardo reviewed baby pictures of Plaintiff which show facial features suggesting Fetal Alcohol Syndrome, including a smooth philtrum and thin vermillion border. (Tr. p. 590). Dr. Mardo concluded that based on Plaintiff's facial dysmorphism present in childhood, a positive history of prenatal alcohol exposure, and a global neurodevelopmental deficit with behavioral features of attention deficit disorder, she believed that Plaintiff met the criteria for the diagnosis of Fetal Alcohol Spectrum Disorder possible Fetal Alcohol Syndrome, at the severe end of the spectrum. (Tr. p. 590). Dr. Mardo concluded that this impairment would be likely to limit Plaintiff's ability to sustain employment. (Tr. p. 590).

At issue here is step two of the ALJ's disability determination, where severity is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments

qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

The ALJ found that Plaintiff had the following severe impairments:  bipolar disorder, history of attention deficit disorder (ADD), restless leg syndrome (RLS), and mild acute right lumbosacral radiculopathy.   An ALJ is not required to identify all impairments at step two as long as the ALJ considers all of a claimant's impairments whether severe or not in combination. Therefore, the ALJ did not err in failing to identify Fetal Alcohol Syndrome and Borderline Intellectual Functioning as severe impairments, as long as the ALJ considered Fetal Alcohol Syndrome and Borderline Intellectual Functioning in combination with Plaintiff's other impairments whether severe or not.

The Commissioner argues that the at step three, the ALJ stated that he considered all of Plaintiff's impairments in combination in assessing Plaintiff's RFC and this statement was sufficient to show that the ALJ considered all of Plaintiff's impairments in combination. A statement by an ALJ that he considered the combined effects of a plaintiff's impairments after mentioning the impairments is sufficient to determine that the ALJ did consider the impairments in combination.  *Wilson v. Barnhart*, 284 F.3d 1219, 1224-1225 (11th Cir. 2002).   In the instant case, the ALJ stated that he considered the severity of Plaintiff's mental impairments, singly and in combination and found that the impairments did not meet the criteria of Listings 12.02 and 12.04.   (Tr. p. 20). The ALJ also stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."   (Tr. p. 22).   The Commissioner concludes that the ALJ considered all of

Plaintiff's impairments including Fetal Alcohol Syndrome and Borderline Intelligence in his RFC determination.

The Commissioner also asserts that opinions of state agency medical experts Barbara Lewis, Ph.D. and Eric Wiener, Ph.D. support the ALJ's findings. These opinions were rendered prior to Dr. Rosenblatt's testing of Plaintiff for both Fetal Alcohol Syndrome and Borderline Intelligence and prior to Dr. Mardo's evaluation. (Tr. p. 76, 110, 576, 590).

The ALJ did discuss both Dr. Mardo and Dr. Rosenblatt's evaluations, but found that neither addressed any specific loss of function or residual abilities, but rather simply concluded that Plaintiff was unable to work. The Court recognizes that an ALJ is under no duty to accept a doctor's finding that a plaintiff is unable to work because findings such as these are not medical opinions and are reserved to the Commissioner.  *See,* 20 C.F.R. § 404.1527(d)(1)-(3) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. … We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraph[] (d)(1)….").

In the instant case, however, after a battery of tests, Dr. Rosenblatt found indications that Plaintiff suffered from Fetal Alcohol Syndrome and diagnosed Plaintiff with Borderline Intellectual Functioning.  Dr. Rosenblatt found that Plaintiff was functioning in the Borderline range for intelligence, had memory difficulties, had attention difficulties, had calculation difficulties, had problem solving difficulties, had abstract reasoning difficulties, and had mental flexibility difficulties.  Dr. Rosenblatt found Plaintiff to have significant neuropsychological deficits, and then concluded that Plaintiff would be extremely limited in his ability to maintain stable employment.  Even ignoring Dr. Rosenblatt's conclusion that Plaintiff had limited abilities

to work, Dr. Rosenblatt listed the many severe impairments that Plaintiff has, and how these difficulties would affect Plaintiff's ability to work.

Likewise, Dr. Mardo found that Plaintiff met the diagnosis for Fetal Alcohol Spectrum Disorder, and did note that Plaintiff's impairments would limit his ability to sustain employment. Dr. Mardo also confirmed Dr. Rosenblatt's evaluation which showed that Plaintiff had severe impairments in attention, concentration skills and in memory and reasoning as is common with people diagnosed with Fetal Alcohol Spectrum Disorders.

The ALJ failed to consider the severe impairments that affect Plaintiff's ability to work that both Dr. Rosenblatt and Dr. Mardo found which were consistent with people who are affected with Fetal Alcohol Spectrum Disorders and Borderline Intellectual Functioning.   The ALJ discounted these doctors' opinions because they both reached the conclusion that Plaintiff's impairments would limit his ability to sustain employment. The Court recognizes that the ALJ included statements that he considered all of Plaintiff's impairments in combination.   However, the ALJ failed to mention the severe limitations found by Dr. Rosenblatt and Dr. Mardo such as Plaintiff's impairments in attention, in concentration, in problem solving, in calculation, in abstract reasoning, and in mental flexibility as well as other limitations. These doctors found these limitations to be at least in part the result of Plaintiff's Fetal Alcohol Syndrome and Borderline Intellectual Functioning.

The Court cannot determine if the ALJ actually considered these limitations and the others found by Dr. Rosenblatt and Dr. Mardo in combination with Plaintiff's other impairments. The Court is unable to conduct a meaningful review of the ALJ's opinion concerning whether the limitations found by Dr. Rosenblatt and Dr. Mardo were considered in combination with Plaintiff's other limitations to determine Plaintiff's RFC. *Robinson v. Astrue,* 2009 WL 2386058,

at *4 (M.D. Fla. Aug. 3, 2009).   The Court determines that the Commissioner's Decision was not supported by substantial evidence at step two.

### B.      Whether a vocational expert is required

Plaintiff argues that the ALJ erred in failing to obtain a vocational expert due to Plaintiff's non-exertional limitations.   Because the Court finds that the Commissioner must reevaluate the medical evidence of record, the Court finds that it is premature to rule on Plaintiff's argument as to whether the ALJ erred in failing to obtain the testimony of a vocational expert.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence as to the issue of whether the ALJ failed to include the severe impairments of Borderline IQ and Fetal Alcohol Syndrome and take these impairments into consideration in his RFC determination.


**IT IS HEREBY ORDERED:**


1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider all of the medical records and the opinions of the physicians of record, consider all of Plaintiff's impairments whether severe or not in combination prior to determining Plaintiff's residual functional capacity, and to obtain the testimony of a vocational expert, if appropriate.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc.

1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE** and **ORDERED** in Fort Myers, Florida on May 12, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties